## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DENNIS BEAUCHAINE,<br><br>          Plaintiff,<br><br>     v.<br><br>JAMES M. WINDER et al.,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-CV-657 TS<br><br>District Judge Ted Stewart |

Plaintiff, Dennis Beauchaine, an inmate at the U.S. Penitentiary in Leavenworth, Kansas, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2009). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915(b). *See* 28 *id.* § 1915. Before the Court are several dispositive motions including Defendants Cook, Hughes, Thomas and Winder's ("County Defendants") motion to dismiss; Defendant Fisch's motion for summary judgment; and, Plaintiff's cross-motion for summary judgment. Also pending are various non-dispositive motions including Plaintiff's motions for appointed counsel, discovery, and leave to amend the Complaint.

**ANALYSIS**

**I. Background**

Plaintiff's Complaint alleges that while confined as a pretrial detainee at the Salt Lake County Adult Detention Center (ADC) Plaintiff was denied a nutritionally adequate diet in violation of the Eighth Amendment.  Plaintiff asserts that for religious and health reasons he maintains a strict vegetarian diet and does not consume meat or animal byproducts, eggs, or dairy products.  While at the ADC Plaintiff was authorized to receive vegetarian meals prepared by the facility's food service provider Canteen Correctional Services ("Canteen").  Plaintiff alleges that on numerous occasions he received meals which were missing items listed on the vegetarian meal menu.  Plaintiff further alleges that some of the items served with the vegetarian meals contained animal byproducts and that the meals often did not provide sufficient calories and lacked adequate nutrients such as protein and calcium.  Plaintiff asserts that he filed over eighty grievances about these problems but jail officials refused to take appropriate corrective measures.  Plaintiff alleges that due to the inadequate diet he suffered severe hunger and malnutrition leading to significant weight loss.  Plaintiff further alleges that the frequency and duration of the problems shows deliberate indifference by jail officials.

2

Plaintiff's Complaint names as defendants four Salt Lake County employees including Sheriff Winder, Chief Deputy Cook, Lieutenant Thomas and Lieutenant Hughes ("County Defendants"). The Complaint also names two former Canteen employees including Mary Jane Fisch, who served as Canteen's General Manager at the ADC, and C. Florence, who is identified as an Assistant Supervisor for Canteen.[1]  Each of the named defendants have been properly served with the exception of Defendant Florence whom the Marshals Service was unable to locate.[2]  Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, costs and "any additional relief [the Court] deems just, proper and equitable."

## II. Non-Dispositive Motions

### A. Motion for Appointed Counsel

Plaintiff seeks appointment of pro bono counsel to represent him in this case.  Plaintiff asserts that appointed counsel is warranted because he cannot afford to retain counsel, he has

---

[1] Fisch has stipulated to being a state actor for purposes of Section 1983.

[2] On October 1, 2008, the Marshals Service reported that Florence was no longer employed by Canteen and that further efforts to serve Florence would be futile without additional identifying information.  (Doc. no. 23.)   Plaintiff never provided any additional information regarding Florence, apparently choosing to proceed only against the present defendants.

limited legal knowledge or access to legal materials, his incarceration makes it difficult to research and investigate issues, he is not equipped to conduct a trial, and he has tried without success to obtain pro bono counsel on his own.

It is well established that plaintiffs in civil cases do not have a constitutional right to counsel. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987). However, the court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1). *See* 28 U.S.C.A. § 1915(e)(1) (West 2005); *Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). When deciding whether to appoint counsel the court considers a variety of factors "including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'" *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996); *accord McCarthy*, 753 F.2d at 838-39. "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

Applying the above standards, the Court finds that

appointment of pro bono counsel is not warranted at this stage of the litigation.  Plaintiff has clearly shown himself capable of adequately pleading his claims, mustering evidence, and presenting or responding to motions.  Moreover, the legal and factual issues presented here are not complex and extensive discovery appears unnecessary.  Thus, Plaintiff's motion for appointed counsel is denied for now, however, if this case goes to trial the Court will revisit the issue *sua sponte*.

### B. Discovery Motions

Plaintiff has filed several motions seeking extensive discovery from County Defendants including jail policies, grievance records, medical records, contracts and other evidence. Plaintiff has also moved to compel discovery of numerous documents from Defendant Fisch and Canteen.  Defendants object to Plaintiff's discovery requests on the grounds that discovery is premature because they have not yet answered Plaintiff's Complaint and have, instead, filed dispositive motions which are currently pending.  Defendants assert that discovery is not necessary for Plaintiff to respond to the pending dispositive motions and that, given the broad scope of the requested discovery, it would be unduly burdensome at this stage of the litigation.  Defendants also argue that they should not be required to bear the burdens of discovery until their entitlement

to qualified immunity has been determined.

Based on a review of Plaintiff's motions to compel and requests for production of documents the Court finds Plaintiff's discovery requests are not tailored to meet Defendants' dispositive motions.  Instead, given their vagueness and extremely broad scope, Plaintiff's discovery requests appear intended primarily to increase the costs of this litigation and unduly burden Defendants.  Based on the pending dispositive motions and Defendants' assertion of qualified immunity the extensive discovery sought by Plaintiff is not appropriate at this stage of the litigation.  Thus, Plaintiff's discovery motions are denied.

### C. Motions to Amend Complaint

Plaintiff has filed two motions for leave to amend his Complaint.  The first motion (doc. no. 44) seeks merely to correct the spelling of Mary Jane Fisch's surname, which is incorrectly listed in the Complaint as "Fish."  Despite this misspelling Defendant Fisch was properly served and has made a general appearance.  She has also notified the Court regarding the correct spelling of her name.  (Doc. no. 34.)  Thus, Plaintiff's motion to amend the Complaint to correct this error is denied, however, the Court will direct that the docket be corrected to properly identify Defendant Fisch.

6

Plaintiff's second motion for leave to amend (doc. no. 51) seeks to add as a defendant Compass Group USA, Inc. d/b/a Canteen Correctional Services ("Canteen").  This motion is not accompanied by a supporting memorandum and Plaintiff does not explain why Canteen is a proper defendant.  Plaintiff also has not submitted a copy of his proposed amended complaint with allegations linking Canteen to any constitutional violation. Thus, Plaintiff's motion to amend the Complaint to name Canteen as a defendant is denied.

### III. County Defendants' Motion to Dismiss

### A. Rule 12(b)(6) Standard

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice.  *See* *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001).  When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  Moreover, when the plaintiff is proceeding pro se the Court must construe the pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Id.*  However, "[t]he broad reading

of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* While a plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

The Supreme Court has clarified the pleading standard by stating that a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). The Tenth Circuit has interpreted this to mean that "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). And, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims

8

that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins, 519 F.3d at 1248*.

### B. Eighth Amendment Standard

The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials "provide humane conditions of confinement by ensuring that inmates receive the basic necessities of [nutritionally] adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002)*. However, the plaintiff must also show that prison officials demonstrated "deliberate indifference," *Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 291 (1976)*.

An Eighth Amendment prison-conditions claim consists of both an objective and subjective component. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.* Because

9

the sufficiency of a prison-conditions claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (*quoting Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

The subjective component of a prison-conditions claim requires the plaintiff to show that the defendant exhibited "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 832. Deliberate indifference "requires both knowledge and disregard of possible risks, a mens rea on a par with criminal recklessness." *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001). The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

## C. Individual Capacity Claims

County Defendants move to dismiss Plaintiff's individual capacity claims because Plaintiff's Complaint does not allege sufficient facts showing that they were personally aware of any significant deprivation, much less that they were deliberately indifferent to a serious risk to Plaintiff's health or safety.

County Defendants contend that the claims against them are

10

based solely on a *respondeat superior* theory of liability.  It is
well settled that liability for a civil rights violation cannot
be based on *respondeat superior*.  *See West v. Atkins*, 487 U.S.
42, 54 n.12, 108 S. Ct. 2250, 2258 n.12 (1988); *Mitchell v.
Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Instead,
"'[p]ersonal participation is an essential allegation in a § 1983
claim.'"  *Id.*  Thus, to state a cognizable claim under § 1983
against a supervisor, a plaintiff must show "that an affirmative
link exists between the [constitutional] deprivation and either
the supervisor's personal participation, his exercise of control
or direction, or his failure to supervise."  *Holland ex rel.
Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).

   The few specific allegations against County Defendants found
in the Complaint show that they had little, if any, direct
involvement with Plaintiff.  In Section IV of the Complaint
Plaintiff alleges that Sheriff Winder is "legally responsible"
for the operations and maintenance of the ADC and the welfare of
ADC inmates, (Compl. ¶ 6); that Chief Cook manages the day-to-day
operations of the ADC and "executes its policies", (Compl. ¶ 7);
that Lt. Thomas is the "lieutenant of programming" at ADC and is
"legally responsible" for "enforcing policy and procedure within
programming" within the housing units, (Compl. ¶ 8); and, that
Lt. Hughes is "legally responsible" for the "Grama requests for

the Jail," (Compl. ¶ 9).  These allegations reveal that Plaintiff's claims against County Defendants are based primarily on their supervisory roles, not direct participation in any alleged deprivation.

Plaintiff argues that the Complaint sufficiently links each County Defendant to the alleged violation of his rights based on their involvement with the grievance process.  Specifically, Plaintiff contends that Lt. Thomas approved his request for a special diet and later denied Plaintiff's grievances about missing items from his vegetarian meals.  Plaintiff further asserts that Defendants Hughes and Cook also denied Plaintiff's grievances at various levels.  Plaintiff contends that each defendant demonstrated deliberate indifference merely by denying grievances or by failing to independently investigate or intervene.

As other courts have recognized, "the mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." *Boles v. Dansdill*, no. 05-cv-01661-PSF-DBS, 2007 WL 2770473, at *4 (D. Colo. Sept. 20, 2007).  This is particularly true where prior grievance responses give the supervisor reason to believe that the situation was satisfactorily resolved at a lower level.  Although reviewing

12

grievances might make a supervisor aware of facts "from which the inference *could be* drawn that a substantial risk of serious harm exists," *Farmer*, 511 U.S. at 837 (emphasis added), a supervisor might also reasonably reach a different conclusion based on the statements of subordinates.

Here, there is nothing in Plaintiff's grievances to support the conclusion that County Defendants knew Plaintiff was being denied adequate nutrition but chose to turn a blind eye.  For instance, Plaintiff does not state that he ever sought medical attention for any nutrition related problems such as weight loss, nor does he offer any reason to suspect that the officers directly involved were untruthful about addressing Plaintiff's concerns.  Instead, as the responses to Plaintiff's grievances show, County Defendants had ample reason to believe that Plaintiff was receiving an adequate diet and that any problems he experienced were merely isolated incidents that were properly resolved at lower levels.  Nor is the sheer volume of Plaintiff's grievances sufficient to show that County Defendants were subjectively aware of a serious deprivation.  In fact, given the tone and apparent frivolity of many of Plaintiff's grievances (i.e., "I would not feed that trash to my dog," Jello contains animal byproducts, jelly missing from tray, "skimpy portion of potatoes") defendants could reasonably have viewed Plaintiff's

barrage of grievances and appeals as merely a form of harassment.

In sum, even assuming that the deprivation alleged here is sufficiently serious, Plaintiff has not alleged sufficient facts showing that County Defendants were subjectively aware of the deprivation or were deliberately indifferent to Plaintiff's needs.  Put simply, Plaintiff's Complaint does not allege sufficient facts to push his assertion of deliberate indifference by County Defendants across the line from merely possible to plausible, nor has Plaintiff shown that discovery is likely to produce evidence to support his claims.  Thus, the Court concludes that Plaintiff's Complaint fails to state a claim against the County Defendants in their individual capacities.

### D. Official Capacity Claims

County Defendants also move to dismiss Plaintiff's official capacity claims.  It is well settled that "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  Municipal entities cannot be held liable under § 1983 based on the doctrine of *respondeat superior*.  *See Cannon v. City and County of Denver, 998 F.2d 867, 877 (10th Cir. 1993); see also Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2051 (1978)*.  In other words, municipal liability may not be premised

14

merely upon the employment of a person who has violated a
plaintiff's federally protected rights.  *Id*.  Instead, to
establish the liability of a municipal entity under Section 1983,
a plaintiff must show "(1) the existence of a municipal custom or
policy and (2) a direct causal link between the custom or policy
and the violation alleged."  *Jenkins v. Wood*, 81 F.3d 988, 993-94
(10th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378,
385, 109 S. Ct. 1197, 1205 (1989)).  Moreover, the custom or
policy must operate as the "moving force" behind the violation.
*Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 399, 117 S. Ct.
1382 (1997).

County Defendants assert that Plaintiff's Complaint fails to
allege facts showing any policy or custom which was the moving
force behind the alleged violation of Plaintiff's rights.
Defendants argue that the Complaint, at best, includes only a
conclusory allegation that the ADC's food service provider,
Canteen, had a practice of leaving food items off meals in order
to save on costs.

Plaintiff's response brief argues that the relevant policy
here is "the County's Policy regarding the use of Religious Diets
in the ADC," which Sheriff Winder "was responsible for
establishing."  (Pl.'s Mem. Opp'n County Defs.' Mot. Dismiss at
8.)  Plaintiff further asserts that in *Garcia v. Salt Lake*

15

*County*, 768 F.22d 303, 308-09 (10th Cir. 1985), the Tenth Circuit held that "the Sheriff's policy concerning the use of Religious Diets in ADC County Jail qualified as policy attributable to a municipal policy maker under *Monell*."  *Id*.

Plaintiff's argument is unpersuasive.  As an initial matter, the alleged policy cited by Plaintiff is so vaguely defined as to be virtually meaningless.  While it is not exactly clear what Plaintiff means by "the use of Religious Diets," Plaintiff has not alleged facts showing that his alleged injury was directly linked to the ADC's religious diet policies.  In fact, Plaintiff argues elsewhere that he was effectively singled out and was the only person receiving vegetarian meals who routinely had items missing from his trays.  Plaintiff's reliance on *Garcia* is also unavailing.  Although that case involved Salt Lake County it dealt with "the County's policy of admitting to jail unconscious persons suspected of being intoxicated."  *Id*. at 308.  *Garcia* does not say anything about inmate diets, religious or otherwise.

Thus, the Court concludes that Plaintiff's Complaint fails to allege a custom or policy which would support holding County Defendants liable in their official capacities.

### IV. Fisch's Motion to Dismiss or for Summary Judgment

#### A. Conversion to Summary Judgment Motion

Defendant Fisch has filed a separate motion to dismiss under

16

Rule 12(b)(6) or for summary judgment under Rule 56.  (Doc. no.
34.)  Fisch's motion is supported by her own sworn affidavit.
(Doc. no 35, Ex. 1.)  Rule 12(d) of the Federal Rules of Civil
Procedure, states that "[i]f, on a motion under Rule 12(b)(6) . .
. matters outside the pleadings are presented to and not excluded
by the court in a motion to dismiss, the motion must be treated
as one for summary judgment under Rule 56."  Fed. R. Civ. P.
12(d).  Before converting a motion to dismiss to a motion for
summary judgment, however, "all parties must be given reasonable
notice and the opportunity to present all the material that is
pertinent to the motion."  Fed. R. Civ. P. 12(d) (2009).  The
Tenth Circuit has held that "[a] court cannot convert a motion to
dismiss to a motion for summary judgment without notice, unless
the opposing party has responded to the movant's attempt to
convert the motion by filing his own affidavits." *United States
v. Gutierrez*, 839 F.2d 648, 651 (10th Cir. 1988) (citing *Ohio v.
Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir.
1978).

     Here, although Plaintiff was not officially notified that
the Court intended to treat Fisch's motion as one for summary
judgment, Plaintiff has responded to Fisch's attempted conversion
by filing opposing affidavits.  In addition to his own
declaration Plaintiff has also filed a motion to admit the

Declaration of Cody Warr.  (Doc. no. 97.)  The obvious purpose
for the Warr declaration is to rebut Fisch's summary judgment
evidence, particularly Fisch's affidavit.  Although Fisch has
opposed admission of the Warr declaration as untimely and
misleading she has also proffered an affidavit by Lt. Finocchio
to rebut it.  (Doc. no. 98.)  Based on the presence of competing
affidavits the Court finds that conversion of Fisch's motion to
dismiss to a motion for summary judgment is appropriate.  Despite
Defendants' evidentiary concerns, in the interest of justice, the
Court will consider the affidavits on both sides.

### B. Summary Judgment Standard

Under Rule 56(c) of the Federal Rule of Civil Procedure
summary judgment is appropriate "if the pleadings, the discovery
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c).  "One of the principal purposes of the summary judgment
rule is to isolate and dispose of factually unsupported claims or
defenses," Cellotex v. Catrett, 477 U.S. 317, 324, 106 S. Ct.
2548, 2553 (1986), thus, Rule 56(b) provides that "[a] party
against whom relief is sought may move at any time, with or
without supporting affidavits, for summary judgment on all or
part of [a] claim." Fed. R. Civ. P. 56(b).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Rule 56(e)(2) provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). Instead, the opposing party must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola*

19

*Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).  Mere allegations
and references to the pleadings will not suffice.  However, the
Court must "examine the factual record and reasonable inferences
therefrom in the light most favorable to the party opposing the
motion."  *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### C. Sufficiency of Plaintiff's Evidence

Fisch's motion for summary judgment asserts that the
pleadings, affidavits and exhibits presented by Plaintiff are not
sufficient to show an Eighth Amendment violation.  Specifically,
Fisch contends that Plaintiff has failed to show that he suffered
a sufficiently serious injury from Fisch's alleged actions to
satisfy the objective element under *Farmer*.  In addition, Fisch
asserts that even if Plaintiff could show a significant injury he
has not produced any evidence that Fisch was deliberately
indifferent to Plaintiff's health or safety.  The Court will
address each of these arguments in turn.

As noted in Fisch's supporting memorandum, Plaintiff's
Complaint does not allege any injury whatsoever resulting from
the purportedly inadequate meals provided at the ADC.  Moreover,
of the forty-one grievances offered as exhibits to Plaintiff's
opposition memorandum not one includes any statement that
Plaintiff suffered any significant mental, emotional or physical
injury due to inadequate nutrition.  (Doc. no. 56.)  This is

despite the fact that the grievances span a period of almost
seven months, from February through August of 2007.  In response
to Fisch's summary judgment motion Plaintiff attempted to remedy
this deficiency by arguing for the first time that he lost thirty
pounds while at the ADC.  (Pls.' Mem. Opp'n Fisch Mot. Sum. J. at
9.)  Plaintiff has never provided any evidence to support this
allegation however.  Fisch, on the other hand, has submitted the
sworn affidavit of Richard Brad Stoney, a registered nurse at the
ADC, who states that he weighed Plaintiff five days after his
arrival at the ADC and noted Plaintiff's weight on an official
medical form as 156 pounds.  (Doc. no. 84, Stoney Aff. at 2.)
Plaintiff attempted to rebut this evidence by filing an
unauthorized surreply stating that he now weighs 205 pounds.
(Doc. no. 86 at 9.)  This self-serving statement, however, is not
only inadmissible, it also says nothing about Plaintiff's weight
at the time he left the ADC.  Moreover, as Defendants have noted,
even if Plaintiff did lose thirty pounds while at the ADC there
is no evidence that it significantly jeopardized his health.
Thus, based on the evidence presented Plaintiff has failed to
show a genuine issue of material fact as to whether he suffered
any serious injury due to inadequate nutrition while at the ADC.

     The Court now turns to the subjective component of the
Eighth Amendment standard as set forth in *Farmer*.  Fisch argues

that Plaintiff's evidence is insufficient to show deliberate indifference to Plaintiff's nutritional needs because she promptly took appropriate measures to address Plaintiff's grievances.  In her affidavit Fisch states:

> [I]n response to a seemingly daily barrage of grievances and complaints from prisoner plaintiff Beauchaine about alleged deficiencies in his meals . . . Canteen revised the assembly line inspection procedure . . . to require a Canteen staff member to individually inspect the contents of each of the meals prepared for the prisoner plaintiff before the meals were placed on the transportation cart to verify that the items served matched the items listed on the Vegetarian Diet menu.

(Fisch Aff. ¶ 8.)

The only evidence offered by Plaintiff to refute Fisch's statement is the declaration of Cody Warr, an inmate trustee who served meals on Plaintiff's cell-block for approximately one month.[3]  Warr states that based on his observations "on a daily basis Inmate Beauchaine's Religious Vegetarian Diet meal trays would be missing food items."  (Warr Aff. ¶ 7.)  And, that "[Plaintiff's] tray was usually the only tray to be missing food

---

[3]  According to Lt. Finocchio, Warr was only confined in Plaintiff's jail unit from August 28, 2007 through October 24, 2007, and only worked as an "Internal Unit Worker" distributing meals from September 21, 2007 through October 24, 2007. (Finocchio Aff. at 2.)

items." (Warr Aff. ¶ 8.)

Even setting aside the evidentiary issues related to the Warr affidavit, Warr's statements are not sufficient to show deliberate indifference by Fisch. Warr does not directly implicate Fisch or Canteen in any wrongdoing, nor does he refute Fisch's claim that she took affirmative measures to address Plaintiff's concerns. At best, Warr's statements show only that the measures Fisch took did not prove effective. Warr's statement that only Plaintiff's meals seemed to be missing items also directly undermines Plaintiff's theory that Canteen had a policy of withholding items to cut costs. Moreover, Warr does not refute Fisch's claim that she had no control over Plaintiff's meals once they left Canteen's "possession, custody and control." (Fisch Aff. ¶ 8.) In fact, Warr's statements raise the distinct possibility that any items missing from Plaintiff's meals were taken after they left Fisch's control.

The grievance records produced by Plaintiff also reveal no evidence of deliberate indifference by Fisch. Instead, the grievances show that Fisch responded professionally and courteously to Plaintiff despite a constant barrage of seemingly frivolous and often insulting grievances. The record also shows that Fisch timely responded to Plaintiff's concerns and took affirmative steps to address his concerns. Thus, Plaintiff has

not met his burden on summary judgment of producing admissible evidence showing that Fisch was deliberately indifferent to Plaintiff's health or safety.

In sum, even if Plaintiff could show that he suffered a significant injury from inadequate nutrition while at the ADC--a burden he has not met here--the evidence presented clearly shows that Fisch was not deliberately indifferent to Plaintiff's health or safety.  Thus, Fisch is entitled to summary judgment.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motion for appointed counsel is **DENIED;**

(2) Plaintiff's motion to amend the Complaint is **DENIED;**

(3) Plaintiff's motions for discovery are **DENIED;**

(4) County Defendants' motion to dismiss is **GRANTED;**

(5) Plaintiff's motion to admit Declaration of Cody Warr is **GRANTED;**

(6) Defendant Fisch's motion for summary judgment is **GRANTED;**

(7) Plaintiff's motion for summary judgment is **DENIED;** and,

(8) this case is **CLOSED.**

DATED this 22nd day of September, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

25